LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Case No.: BK-S-14-11100-ABL |
|---|---|
| JOHN ANTHONY KASPAR and TRACI LENE KASPAR, | Chapter 7 |
| Debtors. | Date: August 4, 2014<br>Time: 2:30 p.m.<br>Place: Courtroom I |

**DEBTORS' LIMITED OPPOSITION TO TRUSTEE'S MOTION FOR AN ORDER APPROVING OFFER FOR SALE OF SUBSTANTIALLY ALL ESTATE ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND RELATED RELIEF**

John and Traci Kaspar (collectively, the "Debtors"), by and through their counsel, the law firm of Larson & Zirzow, LLC, hereby respectfully submit their limited opposition (the "Opposition") to the *Trustee's Motion for an Order Approving Offer for Sale of Substantially All Estate Assets Free and Clear of Liens, Claims and Encumbrances, and Related Relief* (the "Motion") [ECF No. 73] and the accompanying *Declaration of Brian D. Shapiro* (the "Shapiro Declaration") [ECF No. 74] in support thereof as filed by Brian D. Shapiro in his capacity as chapter 7 trustee (the "Trustee") of the Debtors' bankruptcy estate. This Opposition is made and based on the points and authorities herein, the papers and pleadings on file herein, judicial notice of which are respectfully requested, and any arguments of counsel entertained by the Court at the time of the hearing of this matter.

## I. JURISDICTION AND VENUE

1. On February 21, 2014 (the "Petition Date"), the Debtors filed their voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with the above-captioned court, thereby commencing their bankruptcy cases.

2. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, Debtors consent to the entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## II. LEGAL ARGUMENT

3. Prior to the Petition Date, the Debtors were operating various laser-related businesses in the same or similar line as Full Spectrum Lasers ("Full Spectrum"), the proposed purchaser of the Purchased Assets in the Trustee's Motion. Full Spectrum commenced lengthy litigation in Nevada State Court against Debtors and their various companies, which Full Spectrum eventually won by way of default judgment because of discovery mistakes committed by former counsel (which potential malpractice claims are listed in Debtors' schedules) and due to the mounting costs of counsel that made it impossible and cost prohibitive for the Debtors and their companies to defend.[1] Now that Debtors are in bankruptcy, Full Spectrum has continued to pursue the Debtors in a ongoing attempt to try and prevent them from ever competing against Full Spectrum again in the consumer laser market. Although the Debtors understand and appreciate that the Trustee's Motion is attempting to maximize the value of the bankruptcy estates for the benefit of their creditors, the Motion demonstrates substantial overreaching by Full Spectrum, which this Court should carefully police to prevent Full Spectrum from taking advantage of the process and denying the Debtors a meaningful fresh start. An analysis of the specific issues the Debtors' have with the Motion follows.

---

[1] The Trustee references such "findings" in his Motion, yet neglects to discuss in any meaningful fashion that they were done by way of a default judgment and thus not entitled to any claim or issue preclusive effect because they were not actively litigated, among possibly other reasons.

2

4.  First, the language used throughout the Trustee's filings, including the proposed APA itself, is couched in terms of assets "used in or related to the operation of the Companies" as opposed to assets that the Debtor actually specifically owns. Notably, assets owned by the Debtors include <u>only</u> the stock of the entities in question, <u>not</u> the assets of those underlying entities themselves, which assets are <u>not</u> property of the estate. It is unclear, but it appears that the Trustee may be trying to sell (or perhaps inadvertently proposing to sell) property that is not property of the estate and/or assets covered by Debtors' Schedule C exemptions. It is in incumbent on and indeed the burden of the Trustee, as the party seeking to sell the Purchased Assets,[2] to demonstrate that the bankruptcy estate actually owns that which he is trying to sell. See <u>In re Silver Beach, LLC</u>, No. NV-09-1049, 2009 WL 7809002 (B.A.P. 9th Cir. 2009); <u>In re Popp</u>, 323 B.R. 260 (B.A.P. 9th Cir. 2005). Notably also, a finding pursuant to section 363(m) of the Bankruptcy Code does not protect against a challenge to the pre-sale ownership of the assets or interests in the assets. See <u>Isbell v. DM Records, Inc.</u>, Civil Action No. 4:07-cv-146, 2012 WL 369246 (E.D. Tex. Feb. 3, 2012).

5.  The foregoing lack of clarity is all the more troublesome given the lengthy discovery that Full Spectrum and the Trustee have engaged in of the Debtors prior to filing the Motion including multiple continued 341 meetings of creditors and multi-day 2004 exams wherein the Debtors fully cooperated with various substantial discovery requests. Instead of using clear and precise language, the Trustee, undoubtedly due to the demands of Full Spectrum, seeks to use vague and broad language that is not only broad and overreaching, but also likely to cause future problems of interpretation and application. As such, the Debtors request that the sale order specifically state that it only applies to any assets owned by the Debtors' estates as of the Petition Date, that it strike any reference to any property owned by the Debtors' companies in favor of it simply saying that the Purchased Assets include the <u>stock</u> of those companies, and finally, that the Trustee is not selling any assets claimed as exempt in Debtors' Schedule C (Property Claimed as

---

[2] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as ascribed to them in the Trustee's Motion.

3

Exempt).

6. Second, the Court should require protective language in the sale order that the sale is not free and clear of any and all affirmative defenses or recoupment remedies that the Debtors may have in and related to any of Full Spectrum's claims against them because such matters cannot be sold "free and clear" or extinguished by way of the 363 sale as a matter of law. See <u>Folger Adam Security, Inc. v. DeMatteis/MacGregor, J.V.</u>, 209 F.3d 252, 253-43 (3d Cir. 2000) (holding that "affirmative defenses do not constitute an 'interest' for purposes of section 363(f) and, therefore, were not extinguished by the Bankruptcy sale"). Such matters are obviously of concern to the Debtors given Full Spectrum's pending nondischargeability adversary proceeding against them and thus to the extent Full Spectrum is attempting to use this sale to affect the Debtors' defenses therein, such actions should not be permitted.

7. Third, and again clearly calculated to preventing the Debtors from ever competing with them, Full Spectrum goes so far as to list out specific website domain names previously used in the Debtors' companies' various businesses, as well as even website domain names of the Debtors' personal names. As Debtors have already testified, nearly all of these domain names expired prior to the Petition Date, and thus nothing in the sale order can or should prevent the Debtors, just as any other person could, from paying the necessary fees to re-establish such domains from and after the Petition Date.

8. Fourth, the APA includes a reference that Full Spectrum is purchasing "all <u>undisclosed</u> domain names owned by Debtors as of [the Petition Date]." (emphasis added). Such language is improper and ripe for potential mischief by Full Spectrum. Debtors have provided a full disclosure of their "Go Daddy" internet account as of the Petition Date to the Trustee and Full Spectrum, and there is absolutely no basis to allow such accusatory language in the sale order without any basis in law or fact. As such, Debtors request that the sale order reflect that the Purchased Assets only include any domain names under the control of or in use by the Debtors as of the Petition Date, strike any reference to the unsupported allegation that anything has been "undisclosed" by the Debtors, and finally, to the extent any domain name expired as of the Petition Date or thereafter, and thus subject to renewal and use by anyone paying the applicable fee, that

nothing in the sale order prevents the Debtors or any other party from paying such renewal fees and thereafter using such domains.

9. Fifth, and again problematic given the vague nature of how the Purchased Assets are described as "involved in the operation of the Companies," the Trustee is apparently trying to sell and Full Spectrum is apparently trying to buy (and/or require the turnover of the Debtors' personal e-mail addresses and/or password), which may have been used in operation of the defunct businesses, which contain personally identifiable information pursuant to sections 101(41A) of the Bankruptcy Code and 363(b)(1) of the Bankruptcy Code and contain attorney-client privileged communications protected from disclosure pursuant to Rules 501 and 502 of the Federal Rules of Evidence and/or NRS chapter 49. The sale order should expressly provide that such matters are preserved and protected from disclosure.

10. Sixth, paragraphs 27-30 of the Motion request that as part of the sale order, the Debtors be enjoined "from further use of the assets purchased by Buyer," and thus essentially seek to impose some kind of vague, undefined and prospective injunction against the Debtors (among possibly others), which is improper on numerous grounds. First, procedurally, an injunction is only available after the commencement of a separate adversary proceeding in accordance with Rule 7001(7) of the Federal Rules of Bankruptcy Procedure, and upon a showing of a likelihood of an immediate and irreparably injury, both of which the Trustee has failed to commence and demonstrate. As such, although such an overreaching an improper provision may be on Full Spectrum's "wish list" in this sale, it is entirely improper as a procedural matter, not to mention compeletly unsupported as a practical matter. As such, the Debtors request that the Court strike any provision in the proposed sale order imposing any kind of injunction against the Debtors.

11. Finally, Debtors object to the admission of paragraphs 4, 5, and 17 of the Shapiro Declaration because the Trustee lacks any personal knowledge of the pre-petition events referenced therein between or among the Debtors and Full Spectrum, and no foundation is provided for the Trustee's idle speculation regarding such events. In fact, the Trustee's apparent ready willingness to accept and adopt the allegations of Full Spectrum against the Debtor casts doubt the good faith of the overall proposed sale transaction.

### III. CONCLUSION

WHEREFORE, Debtors respectfully request that the Court revise the proposed form of sale order as requested by the Debtors herein, and grant them such other and further relief as is just and proper.

Dated: July 21st, 2014.

LARSON & ZIRZOW, LLC

By: _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd. # 101
Las Vegas, Nevada 89101

Attorneys for Debtors